IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| National City Commercial Capital Corporation, d.b.a. Information Leasing Corporation, | : : : : | |
| Plaintiff, | : : | Case Number: 1:04cv669 |
| vs. | : : | District Judge Susan J. Dlott |
| Gateway Pacific Contractors, Inc., | : : | ORDER GRANTING MOTION |
| Defendant. | : | TO DISMISS |

This matter coming before the Court on Defendant Gateway Pacific Contractors, Inc.'s Motion to Dismiss (doc. 40), the Court having considered the Motion and all other pleadings and papers relating thereto, the Court hereby **GRANTS** Defendant's Motion to Dismiss.

**I.      FACTUAL BACKGROUND**

On or about April 8, 2004, Gateway Pacific Contractors, Inc. ("Gateway"), a California corporation, entered into a contractual agreement ("Agreement") with Norvergence, Inc.[1] ("Norvergence") in which Gateway rented equipment from Norvergence in exchange for a monthly rental fee.[2] (Complaint, doc. 1-1, at 2, ¶¶ 2, 4.) The Agreement allowed Norvergence to assign all or part of the equipment and/or the Agreement to an assignee and prohibited

---

[1] Norvergence is not a party to the case at hand.

[2] According to Defendant's Motion, the lease agreement between Gateway and Norvergence was preceded by a Master Operating Agreement executed between Norvergence and ILC in 2003. This agreement "pertained to the assignment of equipment leases by Norvergence to ILC, including leases such as the one Gateway signed for the Matrix box." (Doc. 15.) Gateway, however, was not made aware that the lease was likely to be assigned to ILC as a third party.

Gateway from withholding rental payments from Norvergence or Norvergence's assignee(s) for any reason. (Id. ¶¶ 8, 10; see Agreement, doc. 1, Ex. A to Complaint.)  The Agreement also contained a floating forum selection clause, which states, in pertinent part:

> This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned by Rentor, the state in which the assignee's principal offices are located, without regard to such State's choice of law considerations and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that state, such court to be chosen at Rentor or Rentor's assignee's sole option.  You hereby waive right to a trial by jury in any lawsuit in any way relating to this rental.

See Agreement, "Applicable Law."  Gateway received the equipment on April 27, 2004 (Complaint ¶ 5), but contends that the equipment was never installed or operational. (Defendant's Motion to Dismiss, doc. 15.)

Shortly after the Agreement was signed by Gateway and in accordance with the "Assignment" provision of the Agreement, Norvergence assigned the rights of the Agreement to National City Commercial Capital Corporation, d.b.a. Information Leasing Corporation ("ILC"), an Ohio Corporation.  (Complaint, ¶ 11.)  Gateway was notified of this assignment via mail.  (Id. ¶ 11; See doc. 1, Ex. B, "Notice of Assignment".)  Before the first payment was due, Gateway notified Norvergence and ILC that Gateway was unilaterally terminating the lease "because of [Norvergence's] failure to provide services."  (Doc. 15.)  Gateway never sent a payment to either Norvergence or ILC.  Consequently, Plaintiff brought suit in this Court to recover Gateway's unpaid funds in the amount of $84,594.22, plus interests and other costs and fees.  Id. at ¶ 15.

On April 3, 2007, Defendant filed a motion to dismiss for lack of jurisdiction (doc. 15) on grounds that the forum selection clause contained in the original contract was invalid.

**II.     ANALYSIS**

Defendant moves to dismiss the instant suit under Fed. R. 12(b)(2) for lack of personal jurisdiction,[3] arguing that the Court lacks jurisdiction over it because the floating forum selection clause contained in the Agreement is invalid and unenforceable. Generally, certain criteria must be met before a court can be said to have jurisdiction over any particular person or entity. However, contracting parties may agree to submit to the jurisdiction of a particular court through the use of a forum selection clause, thereby waiving the requirement that the court have personal jurisdiction over the parties. Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006). In the instant case, there appears to be no basis for personal jurisdiction over Defendant Gateway absent the parties' agreement. Accordingly, the Court's inquiry is limited to the validity of the forum selection clause.

In recent years there has been a flurry of litigation regarding the enforceability of forum selection clauses such as the one at issue in this case, which are often referred to as "floating" forum selection clauses due to the nature with which the forum remains unfixed and shifts based on the location of headquarters of the party holding an interest in the lease payments. See Preferred Capital, Inc. v. Power Engineering Group, Inc., 112 Ohio St.3d 429, 860 N.E.2d 741, 745 (Ohio 2007); Preferred Capital, Inc. v. Sarasota Kennel Club, Inc., 489 F.3d 303 (6th Cir. 2007). In fact, several cases have dealt with forum selection clauses that are identical to the one at issue here, as the case at hand is just one of many cases being litigated in state and federal courts across the country as a result of Novergence's allegedly fraudulent behavior as a rentor of

---

[3] Defendant did not specifically cite personal jurisdiction as the basis for its motion to dismiss, instead stating generally that it is moving for dismissal "under Rule 12(b) for lack of jurisdiction due to an unenforceable forum selection clause." (Doc. 40 at 1.) The Court construes Defendant's motion as a motion to dismiss due to lack of personal jurisdiction.

telecommunications equipment. See Sarasota Kennel Club, 489 F.3d at 305 ("[Norvergence's] conduct has spawned a wave of litigation throughout the country . . .").

Typically, Ohio and federal law treat forum selection clauses similarly, thus eliminating the need for the Court to consider whether to apply state or federal law to determine the enforceability of the disputed clause. General Electric Co. v. G. Siempelkamp, 29 F.3d 1095, 1098 n.3 (6th Cir. 1994). In determining the validity of a particular forum selection clause, the Court considers the following factors: (1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust. Associates in Urology, 453 F.3d at 721 (citing Info. Leasing Corp. v. Jaskot, 151 Ohio App. 3d 546, 784 N.E.2d 1192, 1195-96 (Ohio Ct. App. 2003)); see also Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc., 66 Ohio St. 3d 173, 610 N.E.2d 987, 988 (Ohio 1993). The Supreme Court has indicated that absent a strong showing that a forum selection clause should be set aside, courts should generally enforce the clause, particularly when it appears in the context of a commercial contract. Id. (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).

Applying the three factors to the instant case, the parties do not dispute that the contract at issue is of a commercial nature. Nor does Defendant allege that it agreed to the inclusion of the forum selection clause as a result of fraud or overreaching. See, e.g., Power Engineering Group, 112 Ohio St. 3d 429, 860 N.E.2d at 746 (finding no evidence of fraud or overreaching where the appellants failed to allege that they agreed to the forum selection clause as a result of fraud). Instead, relying on Power Engineering Group, 112 Ohio St. 3d 429, 860 N.E.2d at 746, wherein the Ohio Supreme Court found that enforcement of an identical forum selection clause

4

would not comport with public policy, Defendant argues that enforcement of the instant clause under the circumstances of this case would be unreasonable.

While it is generally true, as indicated above, that federal and Ohio law treat the enforcement of forum selection clauses similarly, the enforcement of *floating* forum selection clauses in particular is one area in which federal and state law diverged for a short period. The Sixth Circuit first weighed in on the reasonableness of floating forum selection clauses under circumstances similar to those of the instant case in Associates in Urology, 453 F.3d at 722-24.

In Associates in Urology, the defendant entered into three lease agreements with Norvergence for the rental of telecommunications equipment. The defendant received the equipment and signed the lease agreements on May 10, 2004. Each of the agreements contained a floating forum selection clause that is identical to the one at issue in our case. At the time of signing, Norvergence had already, unbeknownst to the defendant, assigned its rights to these agreements to the plaintiff.[4] The defendant did not learn of the assignment until several days after signing the agreement.

When the defendant ultimately defaulted on the lease and found itself embroiled in a lawsuit with the plaintiff assignee, the defendant argued that the forum selection clause was invalid and that the court lacked jurisdiction over it. In considering this issue, the Sixth Circuit considered the three factors set forth above, finding that the contract between the parties was commercial in nature and that there was no evidence of fraud or overreaching. As in the instant

---

[4] On September 30, 2003, Plaintiff entered into a Master Program Agreement with Norvergence that gave Plaintiff the option to accept the assignment of existing and future rental agreements between Norvergence and its customers. Associates in Urology, 453 F.3d at 721 n.3. This fact, however, seemingly did not affect the Court's analysis of the case or the subsequent holding.

case, it was the last factor – whether the forum selection clause was unreasonable or unjust – that was the basis of Defendant's argument in Associates in Urology. Id. at 723. The Sixth Circuit identified a rather strict standard for finding a floating forum selection clause invalid under this last factor, stating "[a] finding of unreasonableness or injustice must be based on more than mere inconvenience to the party seeking to avoid the requirements of the forum selection clause. It must instead appear that 'enforcement in Ohio would be manifestly and gravely inconvenient to the party seeking to avoid enforcement such that it will effectively be deprived of a meaningful day in court.'" Id. at 722-723 (internal quotations and citations omitted).

Applying that standard, the Court noted that the defendant "should have realized the implications of agreeing to the inclusion of a forum selection clause that did not identify an assignee or specified jurisdiction . . . [w]hile Defendant may be dissatisfied with the litigation forum, it is not our task to save Defendant from the consequences of an agreement it freely entered into." Id. at 723-24. The Court was also unpersuaded that the defendant had no notice that it may be bound to face litigation in Ohio, and found that it would not be manifestly and gravely inconvenient for the defendant, whose principal place of business was just a state away in Pennsylvania, to have to defend the lawsuit in Ohio. Id. at 724. As a result, the Sixth Circuit held that the forum selection clause was valid and enforceable.

Less than a year later, the Ohio Supreme Court weighed in on the issue, addressing an identical forum selection clause under largely indistinguishable circumstances in Power Engineering Group, 112 Ohio St. 3d 429, 860 N.E.2d at 746. The appellants in Power Engineering Group were twelve defendants that had each entered into lease agreements for telecommunications equipment with Norvergence. The terms of the twelve agreements were

"virtually identical" to one another and the floating forum selection clause at issue in the instant case was present in each agreement. Id. at 743. In accordance with a "Master Operating Agreement" that was executed between Norvergence and Preferred Capital prior to the appellants' signing of the lease agreements, Norvergence assigned the rights to most of the agreements to Preferred Capital the day after the leases were executed, though an unknown number were assigned at a later time.[5] As in the other cases, the appellants were unaware of the assignments and ceased making lease payments as a result of dissatisfaction with the services and savings that Norvergence had promised and failed to deliver, and Preferred Capital filed a lawsuit to recover the lease payments.

The validity of the forum selection clause was once again called into question. In contrast to the Sixth Circuit's decision in Associates in Urology, the Ohio Supreme Court held that "when one party to a contract containing a floating forum-selection clause possesses undisclosed information of its intent to assign its interest in the contract almost immediately to a company in a foreign jurisdiction, the forum-selection clause is unreasonable and against public policy absent a clear showing that the second party knowingly waived personal jurisdiction and assented to litigate in any forum." Id. at 746. Though the court was not persuaded that requiring the appellants to litigate the case in Ohio rather than in New Jersey would unduly burden them or deprive them of their day in court, the court nonetheless found that the floating forum selection

---

[5]On September 30, 2003, before any of the leases were signed, Norvergence executed a Master Operating Agreement with their assignee, Preferred Capital, Inc. As in Associates in Urology and the case at hand, the Master Operating Agreement allowed Norvergence to assign its interests in the lease agreement to a third party. In Power Engineering Group, the assignee was Preferred Capital. While this fact is substantively identical to Associates in Urology and the instant case, the Master Operating Agreement is given more weight in the analysis and holding of Power Engineering Group than in the analysis and holding of the other two cases.

clause was "unreasonable because even a careful reading of the clause by a signatory would not answer the question of where he may be forced to defend or assert his contractual rights." Id. In refusing to enforce the clause, the court noted the following:

> At the time the contract was entered into, the appropriate forum would have been New Jersey; the very next day, in most cases, the lease was assigned to Preferred Capital and the appropriate forum became Ohio. Nothing prevented Preferred Capital from assigning its interest and changing the forum yet again. It is one thing for a contract to include a waiver of personal jurisdiction and an agreement to litigate in a foreign jurisdiction. It is quite another to contract to litigate the same contract in any number of different jurisdictions, located virtually anywhere. Nothing in the record indicates that appellants were fully apprised of the potential for a truly floating forum. The record indicates that NorVergence knew that it intended to assign these leases and that no matter how carefully appellants read the contract, they could never have anticipated the appropriate forum for litigating issues relating to their leases.

Id. Of particular importance to the court's decision was its finding that Norvergence possessed superior information at the time the leases were signed in that Norvergence knew that it would likely assign its interest in the leases to another entity and withheld this information from the appellants. Id.

Shortly after the Ohio Supreme Court issued its opinion in Power Engineering Group, the Sixth Circuit revisited the same issue in a third case, addressing the apparent conflict between federal and state law that had since arisen. Sarasota Kennel Club, 489 F.3d at 308. Again, the plaintiff was an assignee to a lease agreement for telecommunications equipment that brought suit after the defendants ceased payments as a result of dissatisfaction with the assignor company, Norvergence. As in the above mentioned cases, Norvergence executed a master agreement with the assignee prior to the defendants signing the lease agreement and failed to disclose the planned assignments to the defendants. When the plaintiff sued, the defendants again challenged the validity of the forum selection clause, forcing the Sixth Circuit to address

8

the split between federal and state law. The Sixth Circuit made clear that federal courts were to follow Ohio state law in this area, holding that "in diversity actions, federal courts apply state law to determine questions of personal jurisdiction. . . the recent holding of the Ohio Supreme Court controls our decision here. Because it violates the public policy of the state of Ohio, the Norvergence forum selection clause is not enforceable." Id. (internal citations omitted).[6] In the instant case, therefore, the Court is bound to follow Power Engineering Group.

As in the preceding cases, the instant case involves a lease agreement for telecommunications equipment between a commercial business and Norvergence. Norvergence executed an operating agreement with a third party that allowed the third party to assume rights to the contract, while the lessee was not informed of the impending assignment prior to signing the lease. Because there are no facts in our case with which to substantively distinguish Power Engineering Group, this Court is bound to follow the holding of the Supreme Court of Ohio in Power Engineering Group. Accordingly, the Court finds that the forum selection clause in the parties' Agreement is unenforceable and the Court lacks jurisdiction over Defendant.

**IV. CONCLUSION**

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss (doc.

---

[6] The Sixth Circuit additionally found that it would reach the same result were it to decide the matter based upon an Erie analysis. Sarasota Kennel Club, 489 F.3d at 308 (referring to the doctrine arising from Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)).

40).

    IT IS SO ORDERED.

                                                S/Susan J. Dlott
                                                Susan J. Dlott
                                                United States District Judge